## Antonio Estrada v. The State.

### *No. 3364. Decided November 1.*

**Murder — New Trial.** — An exception to the rule that a new trial will not be awarded for the purpose of producing newly discovered evidence to contradict inculpatory testimony is when the newly discovered evidence tends not to impeach the credibility of the prosecuting witness, but to show that he was mistaken as to a material fact about which he testified on the trial. The State's testimony on this trial tended strongly to show murder of the second degree. The testimony of the defendant's witness R. tended as strongly to establish self-defense. To meet this proof the State's witness M. testified that at the time of the homicide the defendant's witness R. was in attendance upon a party distant from the place of the homicide. The contention of the defense was that the party occurred on the night previous to the homicide, and one of the grounds of the motion for new trial was based upon the affidavits of two persons affirming that they attended the said party, met the witness R. at that party, and that the said party occurred on the night previous to the night of the homicide. · *Held*, that under the circumstances the new trial should have been awarded.

Appeal from the District Court of Wilson. Tried below before Hon. George McCormick.

This conviction was in the second degree for the murder of Francisco Ximenes. A term of five years in the penitentiary was the penalty assessed.

In substance the State's witnesses testified that the defendant, the deceased, and one Martinez were among the guests at a party at the house of one Alderete, near Floresville, on the night of the homicide—February 17, 1889; that at about 11 o'clock deceased and Martinez, upon the suggestion of the latter, retired from the house to a point about 150 yards distant to settle a dispute; that when the State witnesses and others reached the parties they were struggling each for the possession of the other's quirt; that the parties were separated by one Zerda; that immediately afterwards, while Zerda had hold of deceased, the deceased struck Martinez a severe blow on the head with the heavy iron handle of his quirt, felling him; that about that time the defendant appeared upon the scene, pistol in hand, and demanded to know who had struck Martinez down; that upon being informed he advanced upon deceased, and as the deceased retreated, striking at him with his quirt, he fired upon deceased three times, shooting him fatally through the head; that he then rode off, exclaiming that he yet had three loads in his pistol which he would give to any of the deceased's friends who felt like taking up the difficulty.

The defense witnesses testified that the deceased was still striking Martinez with the quirt when the defendant reached the scene; that defendant merely waved his hand at deceased, asked him to desist, and stated that he had punished Martinez enough; that deceased, exclaiming "the same to you—I will do you up," rushed upon defendant and struck at him with the iron end of the quirt; that defendant then drew his pistol and

commanded deceased to stop his advance; that deceased continuing to advance and to strike at defendant with the quirt, the defendant fired his pistol into the air and repeated his command to deceased; that deceased continued to advance and to strike at defendant, when defendant again fired into the air; that deceased, unappalled by the shooting, continued to advance, and struck defendant several blows on the arm and continued to strike at him with the quirt, which as used was a deadly weapon, when the defendant fired the third and fatal shot.   Rubio was one of the witnesses who testified to these defensive facts as observed by him at the time.

To impeach Rubio one Cecilio Maldavado testified that she attended a party on Captain Pickett's place, distant from the place of the homicide, on the night of the homicide, and that to her knowledge the defendant's witness Rubio was an attendant upon that party, and remained there throughout the entire night.

The opinion discloses the nature of the newly discovered evidence set out in the defendant's application for new trial.

*W. H. Booker* and *B. F. Ballard*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

HURT, JUDGE.—This is a conviction for murder of the second degree. The evidence presents two theories: 1, culpable homicide, murder in the second degree, or manslaughter; and, 2, self-defense.

One Rubio swore to facts strongly supporting self-defense.   The State proved that Rubio was not present at the homicide, but was at a dance on Captain Pickett's place, some distance from the scene of the homicide. Appellant denies this, contending that Rubio was present, and that since the trial he has discovered witnesses by whom he can prove that the dance at Captain Pickett's was on the night previous to that upon which the homicide was committed.   In support of this ground for a new trial Enemencio Amader and Icidio Castro swear that they were at the dance at Pickett's; that the witness Rubio was there, but that the dance was on the night previous to the homicide.   These affidavits are not contradicted.   In fact there is no doubt that the witness Cecilio Maldavado, who upon the trial swore that the dance was on the night of the homicide, was mistaken.   But it is contended by the State that this newly discovered evidence simply tends to impeach the testimony of Maldavado, and hence is no ground for a new trial.   This proposition is found in the books, and when properly understood is correct.   If the new evidence is simply for the purpose of showing that a witness who has testified in the case is unworthy of credit, a new trial will not be granted.   The rule itself has some exceptions, for it has been held a good ground for new trial that a material witness has since the trial been convicted of perjury on his own

confession.   Manufacturing Co. v. Mathews, 5 N. H., 174.  When a witness makes affidavit of his own mistake a new trial will be granted if the matter about which the mistake was made was material, etc.   Richardson v. Fisher, 1 Br., 145.

In this case probably Maldavado was mistaken as to the fact of the dance and the homicide being on the same night.   If she had sworn to this mistake a new trial should have been granted *under the facts of this case*.   The mistake can be shown otherwise than by her own affidavit. Nor will proof of such a mistake necessarily show corruption in the witness—she no doubt being honestly mistaken.   The testimony of the State tending strongly to establish murder of the second degree, and that for the defense, with almost if not equal cogency, tending to show self-defense, we can not say that without the evidence of Maldavado the verdict would have been the same.   We are of opinion that a new trial should have been granted.   Other questions presented by the record will not likely arise on another trial.

*Reversed and remanded.*

Judges all present and concurring.