## W. T. CAPLES V. STATE.

No. A-156.   Opinion Filed October 18, 1909.

(104 Pac. 493.)

1.   INDICTMENT   AND   INFORMATION—Sufficiency—Previous Decisions as Precedents.   (a) The omission of the word "the" before the words "State of Oklahoma" in the caption of an information is not fatal to the information.

(b) It is not necessary that an information should contain the words "in the name and by the authority of the state of Oklahoma." It is sufficient if it appears from the record of a case that the prosecution was carried on in the name and by the authority of the state. But this court suggests that, as a matter of good pleading, it would be well for indictments and informations to begin with these words.

(c) This court will give full consideration to all authorities which are founded upon. and supported by, living principles, but it will not recognize or follow any precedents which have outlived their usefulness; when the reason of a rule of law ceases, this court will not enforce such rule.

2.   INDICTMENT AND INFORMATION—Allegation of Preliminary Examination. It is not necessary for an information charging a felony to allege that the defendant has had a preliminary examination before an officer authorized by law to hear the same, and has been bound over to await final trial thereon, or has waived such examination. If these things have not been done, the defendant can present this question to the court by plea in abatement.

3.   WITNESSES—Homicide—Harmless Error—Impeachment—Conviction of Offense—Evidence—Admissibility.   (a) If a witness has been improperly impeached, it is not ground for reversal when his testimony does not present any issue material to the case. Such improper impeachment would constitute harmless error.

(b) It is improper to ask a witness, for the sole purpose of impeachment, whether he had married a woman with whom he had committed adultery, or with whom he had been indicted, arrested, or imprisoned, prior to conviction for any offense whatever.

(c) When a defendant, upon a trial for assault with intent to kill, takes the witness stand, and, for the purpose of mitigating the offense, is permitted to testify that he made the assault while smarting under a sense of wounded honor,. on account of an insult offered to his wife, it is proper for the

state to prove the relations existing between the defendant and his wife, and that the defendant had exposed his wife to such insults, in order that the jury may understand the true motive of the defendant in making such assault. For evidence which was properly admitted for this purpose, see facts stated in the opinion.

4.   **TRIAL—Time of Beginning—Change of Venue—Time for Application—Attorney and Client—Duty of Attorney to Court.**
(a) While jeopardy does not begin until after the jury have been selected and sworn, yet for all other purposes the trial begins when the jury are called into the box for examination as to their qualifications.

(b) An application for a change of venue comes too late when presented without reasonable notice to the county attorney, and after the jury have been called into the box for examination.

(c) When an application for a change of venue has been prepared, signed, and verified for over 30 days, and this fact is concealed from the county attorney and the trial court, and the counsel for the defendant obtains repeated postponements of the trial, during this time, under conditions which caused the trial court and county attorney to believe that the case would be tried at the date of the postponement, and then when the case is finally called for trial, and a motion for a continuance has been overruled, and a jury has been called into the box for examination, and the trial is thus begun, the application is presented without previous notice to the county attorney, such proceedings will not be approved by this court.

(d) The court should treat all persons having business therein with absolute fairness, and such persons, and especially attorneys, must treat the court in the same manner.

(e) The proper administration of justice requires the lawyers should be fair and honorable with opposing counsel, the court, and with their clients. Any deviation from this rule will be condemned by this court, and should not be tolerated by trial courts.

(f) It is an act of justice to say that the attorneys who appeared for the defendant in this court had no connection with the case in the trial court, and are in no manner responsible for what was done by the counsel who then represented the defendant.

(Syllabus by the Court.)

*Appeal from District Court, Carter County; Stilwell H. Russell, Judge.*

W. T. Caples was convicted of assault with intent to kill, and he appeals. Affirmed.

The defendant was convicted in the district court of Carter county of the offense of assault with intent to kill, and his punishment was assessed at confinement in the penitentiary for the period of five years. The facts of the case are sufficiently stated in the opinion. The court instructed the jury as follows:

"Gentlemen of the Jury:

"(1) The court instructs you that in this case the defendant, Will Caples, now on trial before you, is being prosecuted by the state of Oklahoma, upon an information duly and legally presented in this court, charging him on or about the 24th day of April, 1908, at and within the county of Carter, and state of Oklahoma, and within the jurisdiction of this court, with having committed the crime of assault with intent to kill, in manner and form as follows, to wit: The said Will Caples did then and there unlawfully, intentionally, wrongfully, and feloniously shoot at one Elmer Finley with a certain firearm, to wit, a pistol, with intent then and there and thereby to kill him, the said Elmer Finley, contrary to the form of the statutes in such case made and provided, etc.

"(2) The court instructs you that, for a more definite and accurate description of the crime charged against the defendant, you are referred to the indictment, which you will take with you in your retirement.

"(3) You are instructed that the statutes under which the defendant is being prosecuted is as follows: 'Every person who intentionally and wrongfully shoots, shoots at or attempts to shoot at another, with any kind of firearm, air gun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death or resisting the execution of any legal process, is punishable by imprisonment in the state prison not exceeding ten years.'

"(4) To the information read to you, the defendant has entered his plea of not guilty, and you are instructed that under the law the defendant is presumed to be innocent of the offense charged against him, and of every ingredient thereof, until such presumption is overcome by competent evidence to your satisfaction beyond a reasonable doubt, and you are instructed in this connection that it devolves upon the state to prove to your satisfaction beyond a reasonable doubt every material allegation of the information charging the offense against the defendant.

"(5) The jury are the sole judges of the facts proven and of the credibility of the witnesses, and each of them, and of the weight and value to be given to their testimony, and this rule and instruction applies to each and every witness who has testified in this case. In determining what credit you will give to a witness and the weight and value you will attach to his testimony, you will take into consideration the conduct and appearance of the witnesses on the stand, the interest of the witness, if any, in the trial or the result thereof, the motives of the witness in testifying, the witness' relation to, or feeling for or against, the defendant, and give the testimony of each witness such weight and value as you may deem right and proper.

"(6) You are instructed that an assault is any wilful or unlawful attempt or offer, with force or violence, to do a corporal hurt to another.

"(7) You are instructed that homicide, or attempt to commit a homicide, is justifiable when committed by any person when resisting any attempt to murder such person or commit any felony upon him. Second, when committed in the lawful defense of such person, when there is a reasonable ground to apprehend a design to commit a felony against such person, or to do him some personal injury, and there is imminent danger of such design being accomplished.

"(8) Therefore, in this case, if you believe from the evidence beyond a reasonable doubt that the defendant, W. T. Caples, did on or about the time alleged in the information, in the county of Carter and state of Oklahoma, intentionally and wrongfully, with a pistol in his hand and held, shoot, at Elmer Finley, with said pistol, with intent to kill the said Elmer Finley, as alleged in said information, then under such circumstances you are instructed that it is your duty to find the defendant guilty, as charged in the information.

"(9) You are instructed that although you may believe from the evidence that the defendant's wife communicated to him the fact that the witness, Elmer Finley, had made overtures to her to have carnal intercourse with her, in the manner testified to in the evidence before you, and you further believe that this was the reason that prompted the shooting at the said Elmer Finley by the defendant, if you find that he did so shoot at him, then you are instructed that such communication referred to did not excuse or justify the defendant in shooting at the said Finley, as alleged in the information, and if you find that such communications were

the reason for such shooting, then you are instructed to find the defendant guilty.

"(10) You are instructed that in the event you find the defendant guilty as herein charged, you may assess his punishment by imprisonment in the penitentiary for any time not exceeding 10 years.

"(11) Gentlemen of the jury, the law of the case of your guidance is found in these instructions, and by which you will be governed, but as to the facts, you are the sole judges of them and of their weight and value; and, without prejudice upon the one hand or sympathy upon the other, let your verdict be found.

" S. H. RUSSELL, Judge."

The case is regularly before us on appeeal.

*Pruiett & Sniggs* and *E. G. McAdams,* for appellant.—On sufficiency of information; formal requirements of the Constitution: *State v. Campbell* (Mo.) 109 S. W. 706; *White v. Commonwealth,* 6 Binn. (Pa.) 179; *Yeager v. Grove,* 78 Ky. 278; *City of Davenport v. Bird,* 34 Iowa. 524; *State v. Hosledahl* (N. D.) 52 N. W. 315; *Jefferson v. State* (Tex. App.) 7 S. W. 244; *Saine v. State,* 14 Tex. App. 144; *Calvert v. State,* 8 Tex. App. 538; *Gould v. People,* 89 Ill. 216; *Parris v. People,* 76 Ill. 274;

*Chas. L. Moore,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE (after stating the facts as above). First. In this case we have been favored by able and exhaustive oral arguments and briefs, both by the defendant and the state. The following assignments of error are relied upon to secure a reversal of the conviction. First, in their brief counsel for the defendant say:

"The first assignment of error relied upon by plaintiff in error is that the court did not have jurisdiction to hear and determine this cause, under and by virtue of the information filed in this cause, for the reason that the information is styled 'State of Oklahoma,' Plaintiff, v. W. T. Caples, Defendant, which is and was contrary to the Constitution of the state of Oklahoma, in this, to wit: That said information should have been styled 'The State of Oklahoma,' Plaintiff, v. W. T. Caples, Defendant, and further that said court did not have jurisdiction to hear and determine said cause, for the reason that said information is fatally

defective, and contrary to the Constitution of the state of Oklahoma, in this, to wit: That said prosecution was not carried on in the name and by the authority of the state of Oklahoma, as provided by the Constitution of said state. Section 19, art. 7, of the Constitution of Oklahoma is as follows: 'The style of all writs and processes shall be: "The State of Oklahoma." All prosecutions shall be carried on "in the name and by the authority of the state of Oklahoma." All indictments, informations and complaints shall conclude: "Against the peace and dignity of the state." ' It will be noted from this information that the word 'the' is left out before the word 'state' in the style of the cause. Second. That it nowhere appears from the information that the prosecution is carried on in the name and by the authority of the state of Oklahoma, as provided by the Constitution of this state. Plaintiff in error contends that this is a fatal error to the information, and that the court was without jurisdiction to proceed with the trial of the cause."

The information in this case is as follows:

"In the District Court, in and for Carter County, Oklahoma,
     "State of Oklahoma, Plaintiff, v. Will Caples, Defendant.
                    "Information.
     "Comes now James H. Mathers, the duly qualified and acting county attorney, in and for Carter county and state of Oklahoma, and on his official oath gives the district court in and for said Carter county and state of Oklahoma to know and be informed that the above did, in Carter county, and in the state of Oklahoma, on the 24th day of April, in the year of our Lord, A. D. 1908, commit the crime of assault with intent to kill in manner and form as follows: The said Will Caples did then and there unlawfully, intentionally, wrongfully, and feloniously shoot at one Elmer Finley with a certain firearm, to wit, a pistol, with intent then and there and thereby to kill him, the said Elmer Finley, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Oklahoma.
               "James H. Mathers, County Attorney, Carter County.
     "State of Oklahoma, Carter County.—ss.: Elmer Finley, being duly sworn, on oath declares that the statements set forth in the above information are true.            ELMER FINLEY.
     "Subscribed and sworn to before me this the 24th day of April, 1908.                            C. T. VERNON,
                                              "District Clerk."

The first contention of counsel for the defendant is that "it will be noted from this information that the word 'the' is left out before the word 'state' in the style of the case," and that this constitutes a fatal defect in the information. We cannot agree with this position for two reasons, viz.: First, the caption of the cause is placed on the information for convenience, and for the purpose of ready identification, and constitutes no part of the information itself. It is surplusage, pure and simple, and neither adds to or takes from the charge; second, if it were a necessary part of the information we could not agree with counsel for the defendant. Write two sentences—one, "The state of Oklahoma," and the other "State of Oklahoma"—and submit them to the educated and uneducated alike, and the answer would be the same from both sources: That they each have substantially the same meaning. We are required by our statute to construe the laws of Oklahoma liberally, to promote the purposes for which they were enacted, and in furtherance of justice. We heartily indorse this wise provision of law, and propose to carry it out in spirit and in letter. This is in harmony with the Divine law, which declares. "For the letter killeth, but the spirit giveth life." 2 Cor. iii, 6. Even without this statute, we would hesitate long before we would apply any narrow technical rule of construction to the Constitution. Constitutional provisions should always receive a broader and more liberal construction than statutes. The rule of construction of a statute is the intention of the Legislature. In construing constitutional provisions the supreme question is, What did the people whose votes adopted and placed the Constitution in force intend? Therefore a common-sense, rather than a technical, construction should be placed upon the language used in a Constitution.

Mr. Cooley, in his work on Constitutional Limitations (pages 89, 101) says:

"The object of construction, as applied to a written Constitution, is to give effect to the intent of the people in adopting it. When the inquiry is directed to ascertain the mischief designed to be remedied, or the purpose sought to be accomplished by a par-

ticular provision, it may be proper to examine the proceedings of the convention which framed the instrument. Where the proceedings clearly point out the purpose of the provision, the aid will be valuable and satisfactory; but where the question is one of abstract meaning, it will be difficult to derive from this source much reliable assistance in interpretation. Every member of such a convention acts upon such motives and reasons as influence him personally, and the motions and debates do not necessarily indicate the purpose of a majority of a convention in adopting a particular clause. It is quite possible for a clause to appear so clear and unambiguous to the members of a convention as to require neither discussion nor illustration, and the few remarks made concerning it in the convention might have a plain tendency to lead directly away from the meaning in the minds of the majority. It is equally possible for a part of the members to accept a clause in one sense and a part in another. And even if we were certain we had attained to the meaning of the convention, it is by no means to be allowed a controlling force, especially if that meaning appears not to be the one which the words would most naturally and obviously convey. For as the Constitution does not derive its force from the convention which framed, but from the people who ratified, it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed. These proceedings, therefore, are less conclusive of the proper construction of the instrument than are legislative proceedings of the proper construction of a statute, since in the latter case it is the intent of the Legislature we seek, while in the former we are endeavoring to arrive at the intent of the people through the discussions and deliberations of their representatives. The history of the calling of the convention, the causes which led to it, and the discussions and issues before the people at the time of the election of the delegates will sometimes be quite as instructive and satisfactory as anything to be gathered from the proceedings of the convention."

The second objection to the information is "that it nowhere appears from the information that the prosecution is carried on in the name and by the authority of the state of Oklahoma." In some states this is required, but it would be an act of pure assump-

tion of legislative power on the part of this court, to establish such a rule in this state. Section 192, Bunn's Okla. Const., is as follows:

"The style of all writs and processes shall be 'The State of Oklahoma.' All prosecutions shall be carried on in the name and by the authority of the state of Oklahoma. All indictments, informations, and complaints shall conclude, 'against the peace and dignity of the state.'"

An information is not a writ or process; it is an accusation upon which writs and processes issue. In volume 8, p. 7531, of Words & Phrases Judicially Construed, we find the following:

"Writs and processes of the courts may be divided into two classes: First, those which point out specifically the property or thing to be seized; second, those in which the officer is directed to levy the process upon property of one of the parties to the litigation, sufficient to satisfy the demand against him, without describing any specific property to be thus taken."

This is supported by a great array of authorities. So this clause of the Constitution clearly does not require an information to begin with "The State of Oklahoma." It is true that the Constitution requires that "All prosecutions shall be carried on in the name and by the authority of the state of Oklahoma," but it is nowhere required that this allegation shall appear in the information or indictment. This question was before this court in the case of *Arie v. State,* 1 Okla. Cr. 666, 100 Pac. 33, and we there held that, if it appears from the record that the prosecution was actually conducted in the name and by the authority of the state, the object and purpose of the Constitution is accomplished, even though no such allegations appeared in the information or indictment. Suppose that this allegation was in the information, and the record discloses the fact that the prosecution was conducted by private parties without authority from the state, would the allegation of the information give the court jurisdiction? We do not profess to be infallible, but to our minds it is clear that the purpose of this provision in the Constitution is to protect the people of this state from private prosecution which might degenerate into persecutions, and from prosecutions

from any other foreign power save that of the state. And when the record clearly shows that the purpose of the Constitution has been accomplished, this court will hold that is enough. The supreme purpose of this court is to give the people of this state a just and harmonious system of criminal jurisprudence, founded on justice and supported by reason, freed from the mysticism of arbitrary technicalities, and this standard will control our decisions, it matters not what or how many other appellate courts may have decided to the contrary. But we are pleased to know that we are not without support of respectiable authority in our views upon this question.

In *State v. Russell*, 2 La. Ann. 605, the Supreme Court of Louisiana said:

"The defendant, Edward Russell, was convicted of manslaughter upon an indictment charging him with murder, and he moved for an arrest of judgment on two grounds: First. That the indictment does not aver, with sufficient certainty, that the deceased died of the mortal blows charged to have been given by the accused; secondly, that the indictment does not purport in its margin, or in the body, to be carried on 'in the name and by the authority of the state of Louisiana,' and does not conclude 'against the peace and dignity of the same.' This motion was overruled and sentence pronounced, and the accused has appealed. * * * The second ground we deem to be equally untenable. The expressions which it is contended should be used in the indictment occur in the Constitutions of several states of the Union, and the point now presented has been so frequently decided in those states that it can scarcely be considered an open question. It has been repeatedly held to be a sufficient compliance with the constitutional requisition that the prosecution should appear to be conducted in the name of the state, and that a formal averment that it was found by the authority of the state was not essential to the validity of the indictment. *Greeson v. State*, 5 How. (Miss.) 36; *State v. Johnson*, Walk. (Miss.) 392; *Allen v. Commonwealth*, 2 Bibb (Ky.) 210; *State v. Anthony*, 1 McCord (S. C.) 285. In the case of *State v. Calvin Moore*, 8 Rob. (La.) 518, decided by the late Court of Errors and Appeals in Criminal Cases, these words were neither directly nor impliedly held to be essential to the validity of an indictment. The language of the

3 Cr.—6

instrument was merely quoted, from which it appeared that it contained the expressions which the defendant intended were required by the Constitution, and consequently that the objection urged was without foundation; but there was no intimation of an opinion that their absence would have been fatal."

In *State v. Kerr,* 3 N. D. 525, 58 N. W. 27, the court said:

"It is first urged by plaintiff in error that it does not appear from the indictment that the prosecution is carried on 'in the name and by the authority of the state of North Dakota,' as required by section 97 of the state Constitution. * * * The indictment is presented by 'the grand jury of the state of North Dakota in and for the county of Griggs.' It thus appears, indirectly but certainly, that the prosecution was carried on in the name and by the authority of the state. That is all that the constitutional provision requires. It is not necessary that such facts should be specifically recited. See *State v. Thompson,* 4 S. D. 95, 55 N. W. 725, where, under the same constitutional provision, an indictment identical with the one in this case on the point in question was sustained."

In *State v. Thompson,* 4 S. D. 99, 55 N. W. 725, the Supreme Court said:

"It will be observed that the indictment is entitled 'State of South Dakota v. Nathaniel R. Thompson'; that it was found and presented to the court by a grand jury of said county, under the sanction and by the authority of the state's attorney. It would seem therefore to be a prosecution in the name and by the authority of the state, and that the indictment in form purports to be a prosecution in the name and by the authority of the state. It will be noticed that the Constitution, while providing that the prosecution shall be carried on in the name and by authority of the state, does not provide that it shall be stated in the indictment that it is carried on by authority of the state. If, therefore, the prosecution is in the name of the state, and carried on under the sanction of the proper officer of the state, namely, the state's attorney, we are of the opinion the constitutional provision is complied with, and that it is not necessary that the indictment shall state that it is found and presented by the authority of the state."

In *Allen v. Commonwealth,* 5 Ky. 210, the Supreme Court said:

"The first objection is predicated upon the constitutional requisition 'that all prosecutions shall be carried on in the name

and by the authority of the commonwealth of Kentucky.' The indictment is in the usual form in the name of the commonwealth, and concludes against its peace and dignity, but does not express to be found by the authority of the commonwealth. Such an expression is, however, wholly unnecessary. At common law, prior to the Revolution, prosecutions were carried on in the name and by the authority of the king in his political capacity; but the forms of indictment show that it was unnecessary to be expressèd to be found by his authority. When we threw off the regal government and adopted the republican form, it became necessary to provide that prosecutions should be carried on in the name and by the authority of the commonwealth; but as under the regal, so under the present form of government, it is equally unnecessary that an indictment should expressly aver by what authority it is found and carried on. This indictment was, as all other indictments must be, carried on by the authority of the commonwealth of Kentucky, and not by the authority of any other power; and that is alone what the Constitution required."

In *Wrocklege v. State,* 1 Iowa, 170, the Supreme Court said: "The first question that is raised by the demurrer is whether this prosecution is conducted in the name and by the authority of the state of Iowa, within the meaning of the Constitution. The style of the indictment is as follows: 'The State of Iowa, Muscatine County. In the District Court of said County. May Term, A. D. 1854. The grand jurors of the state of Iowa, within and for the body of the county cf Muscatine, duly elected, impaneled, charged and sworn, in behalf of said state of Iowa, on their said oaths, present,' etc. ' The Constitution (article 5, § 6) provides that 'the style of all process shall be, "the state of Iowa," and all prosecutions shall be conducted in the name and by the authority of the same.' It is contended that instead of 'in behalf of the said state,' a presentment should be expressed in the indictment to be 'in the name and by the authority of the state of Iowa.' While we think the latter the more appropriate style, we are not .prepared to say that it is the only phrase that may be used, or that it is essential to the validity of the indictment. The phrase placed under quotations in this section. of the Constitution, to wit, 'The State of Iowa,' constitutes the technical, authoritative name of the state. See *Harriman v. State,* 2 G. Greene (Iowa) 270. It is in the name that all prosecutions must be conducted, and it is by the authority ·of the same that they must be conducted. But we do not understand the Constitu-

tion by this to mean that it must be expressed in each proceeding, in the conduct of a prosecution, that it is made in the name and by the authority of the state of Iowa."

In *State v. Delue,* 2 Pin. (Wis) 207, the court said:

"It is insisted that, inasmuch as the Constitution of this state requires (article 7, § 17) that 'all criminal prosecutions shall be carried on in the name and by the authority of the state,' this indictment is defective in not alleging affirmatively that it is so presented. We do not think that it was designed by this provision to require, either in the caption or in the body of the indictment, an affirmative allegation in the language of the Constitution, although such, perhaps, might be a more formal and appropriate practice. It is doubtful, however, whether this provision of the Constitution is applicable to indictments, which are but the presentments of grand juries, embodying in legal form the result of their inquiries for the information of the court. They are the basis upon which process issues against the offender, and which process may be considered as the first step in the prosecution specified in the Constitution. This process very properly issues in the name and by the authority of the state. But the indictment, being but a preliminary proceeding, leading to, rather than constituting, the prosecution, need not bear on its face the evidence of having been found by a grand jury acting expressly in the name of the state. It is sufficient, in respect to the point objected to, if the venue be laid in some county within the state, and it be substantially set forth therein, that the grand jurors are good and lawful men, duly impaneled, charged, and sworn to inquire in and for the body of such county."

In *Savage v. State,* 18 Fla. 948, the Supreme Court said:

"The Constitution says all prosecutions shall be conducted in the name and by the authority of the state. It is not required that the indictment on its face shall say in words that it is 'prosecuted in the name and by the authority' of the state. It merely directs that the state in its name and by its authority shall prosecute, and that no other name or any other authority shall control the prosecution. It is sufficient that the court shall recognize the state and its authority, and no other party or authority, in such prosecutions, and that the proceedings are so conducted, and the record show it. The cases cited by counsel for plaintiff in error (*Harriman v. State,* 2 G. Greene [Iowa] 270, and *Lovell v. State,* 45 Ind. 550, 551) sustain this view. In the case of the *State v.*

*Gleason,* 12 Fla. 247, 253, the court did not deem it very material that the information should upon its face express the words of the Constitution, but directed it to be so amended out of caution; the information being deemed the process in *quo warranto* proceedings. The indictment in form purports to be a prosecution in the name of the state, and the attorney for the state prosecuted for the state. The court recognized no other authority than that of the state, and this is sufficient. The plea tendered 'to the jurisdiction' was therefore properly overruled, and the motion to withdraw the plea of not guilty for the purpose of filing such plea was well refused. In fact the plea proposed was not a plea to the jurisdiction."

In *Holt v. State,* 47 Ark. 197, 1 S. W. 61, the court said:

"The commencement of the indictment is as follows: 'The grand jury of Washington county accuses Charley Washington, John Washington, and Sam Holt of the crime of an assault with a deadly weapon, committed as follows.' Appellant insists that this commencement is insufficient and the indictment is fatally defective, because it is not stated in the commencement that the grand jury accused the defendants therein named of the crime charged 'in the name and by the authority of the state of Arkansas.' This is not required or necessary. There is no particular form of indictment prescribed by the statute of this state which is required to be strictly followed."

In *Greeson v. State,* 5 How. (Miss.) 36, the court said:

"The first assignment of error was not seriously insisted upon in the argument, and it will be sufficient to observe that the question which it presents has been decided by the Supreme Court of this state, in the case of *State v. Johnson,* Walk. (Miss.) 395. That court held that it was sufficient if it appeared in the record that the prosecution was in the name of the state, and that a formal statement of the fact that the indictment was found by its authority was not necessary. The only object which our Constitution had, in requiring that all prosecutions should be in the name and by the authority of the state, was to exclude any other or foreign power from the exercise of this authority, and to assert the sovereignty and supremacy of the state as paramount."

In *Crutz v. State,* 4 Ind. 387, the court said:

"It is contended that the judgment should have been arrested for this reason, viz., the indictment does not charge that it was found 'in the name and by the authority of the state.' This is a

mistake. 'A formal statement that an indictment was found by the authority of the state is not necessary, if it appears from the record that the prosecution was in the name of the state.' Wharton's Crim. Law, 101. The record before us shows that the state is a party, and that the prosecution was carried on in her name and by her authority. This, we think, sufficiently meets the requirements of the Constitution, without any specific allegation in the indictment to that effect. Rev. St. 1852, p. 61."

We might continue to cite other cases to show that our views are supported by authority, but deem these sufficient. We know that there are respectable authorities holding to the contrary, but this court will not follow any precedents unless we know and approve the reason upon which they are based, it matters not how numerous they may be, or how eminent the court by which they are promulgated. It is our duty to construe the laws of Oklahoma regardless of the law in other states. Now that our criminal jurisprudence is in its formation period, we are determined to do all in our power to place it upon the broad and sure foundation of reason and justice, so that the innocent may find it to be a refuge of defense and protection, and that the guilty may be convicted, and taught that it is an exceedingly serious and dangerous thing to violate the laws of this state, whether they be rich and influential or poor and friendless. They all stand alike and upon an equality before this court. If we place our criminal jurisprudence upon a technical basis, it would become the luxury of the rich, who can always hire able and skilled lawyers to invoke technicalities in their behalf, but what would become of the poor and friendless who cannot secure these services? It is the poor and the friendless who cannot secure these services, and who need the strong arm of the law for their defense. By placing our system of criminal jurisprudence upon the basis of reason justice becomes the right of the poor as well as the rich. We will give full consideration to all authorities which are supported by living principles, and will follow them when in harmony with our laws and the conditions existing in Oklahoma. But we must confess to want of respect for precedents which were found in the rubbish of Noah's Ark, and which have outlived their usefulness, if they ever had any. When

the reason for a rule of law ceases, the rule should cease also. If this be revolution, then we are and will continue to be revolutionary. The information in this case is free from the objections urged against it, and we approve the action of the trial court in overruling the objections thereto.

Second. In the brief in this case counsel for the defendant says:

"The second assignment of error is that the lower court did not have jurisdiction to hear and determine said cause by reason of the fact that the information failed to allege and set out that the plaintiff in error, or the defendant below, had had a preliminary examination before an officer authorized by law to hear the same, or that he had waived said preliminary hearing upon said charge, as alleged in said information."

This question has been passed upon by this court in the case of *Ketch Canard et al. v. State,* 2 Okla. Cr. 505, 103 Pac. 738. Speaking for the court, Judge Owen said:

"As to the second question, section 26, Bunn's Constitution of Oklahoma, is as follows: 'No person shall be prosecuted criminally in courts of record for felony or misdemeanor otherwise than by presentment or indictment or by information. No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate or having waived such preliminary examination.' Counsel for defendants urge with much force that the trial court acquires no jurisdiction of a felony charge prosecuted by information, unless the defendant has had a preliminary examining trial, or has waived the same, and that the information must allege one or the other. We agree with counsel that there must be an examination or a waiver, but we do not agree with their contention that it is necessary to plead this examination or waiver in order to give the court jurisdiction. We understand the rules governing prosecutions by information to be identical with those governing prosecutions by indictment. When the information is filed in court by the prosecuting attorney, the presumption of law is that it is legally done; that the examination of the defendant has been had or waived, and consequently the court has jurisdiction of the same as when an indictment has been returned by a grand jury in open court. When an indictment is presented by a grand jury in open court, the presumption is that it is legally presented, that the jurors were prop-

erly summoned, legally qualified, and competent, and that the required number, at least, concurred in the finding. These facts, though essential to the lawful finding and presentment, are not necessary to be set forth in the indictment. *Washburn v. People,* 10 Mich. 372. Whether an examination has or has not been had is not a question of pleading, but a question of fact, to be raised by the defendant or not at his option, which fact is always within the knowledge of the defendant. If he claims that this right or privilege has been denied him, and will insist on his right to it, he can and should do so when he is arraigned on the information. The fact that a prisoner has not been given an examination before an examining magistrate before the filing of an information against him is a matter that may be properly pleaded in abatement, or by motion to quash, which is in the nature of a plea in abatement, founded on affidavits or such other proofs as the court may permit. If it were necessary to allege a preliminary hearing, it would be necessary to prove it. Would this not work prejudice to the defendant? Would not proof that the examining magistrate had believed the defendant guilty on examining trial influence the jury against him? Would it not put upon the defendant an additional burden to permit the prosecuting attorney to argue as a circumstance against defendant's guilt that the examining magistrate who held the examination immediately after the commission of the alleged crime believed the defendant guilty?"

The doctrine announced in this case represents our mature views, and is here reaffirmed.

Third. In the brief in this case counsel for the defendant next say: "The fifth and sixth assignments of error have practically been settled by this court." These assignments of error are as follows:

"Fifth. The court erred in permitting the state to prove that Mrs. Thompson had been fined in the city court for conducting a house of ill fame. Sixth. The court erred in requiring the defendant to testify as to the circumstances under which he married his wife, and by requiring the defendant to testify that he was under prosecution at the time he married his wife."

The record sustains the facts stated in these two assignments of error.

It is also true in *Price v. State,* 1 Okla. Cr. 358, 98 Pac. 447. This court there said:

"It is error on cross-examination, for the purpose of affecting the credibility of a witness, to ask as to whom he married, for the purpose of showing that he had married a woman with whom he had committed adultery."

We are still of the same opinion.

It is also true that in *Slater v. U. S.*, 1 Okla. 275, 98 Pac. 110, this court did say:

"For the purpose of affecting the credibility of a witness he may be asked, on cross-examination, if he had been convicted of a felony or of any crime which involves a want of moral character; but it is improper to ask such witness if he had been indicted, arrested, or imprisoned, before conviction, for any offense whatever."

For the reasons given, and upon the authorities quoted in the Slater Case, we have no sort of doubt as to the justice of this rule. If the evidence complained of in this case had been admitted for the purpose of affecting the credibility of the defendant, as a witness, and if it would have had this effect, and have thereby deprived this defendant of any substantial right, we would reverse this conviction. When this court has decided a question, we will see that the decision so rendered is respected and followed by all of the trial courts in the state. Otherwise it would be idle and worse than useless to have an appellate court. But the question arises as to whether or not the rulings of the trial court complained of are contrary to the previous decisions of this court? A decision must be construed in the light of the facts of the particular case in which it is rendered. A principle of law may be applicable to a given state of facts, and not applicable to another and different state of facts. Evidence may be clearly inadmissible for one purpose, and the same evidence may. be entirely proper for another purpose. This must be determined in the light of reason as applied to the facts of each individual case before the court. There are two reasons why the evidence complained of should not work a reversal in this case:

First, even if improperly admitted, it was harmless error in view of the testimony in the case. It is an undisputed fact, shown by the record, that the defendant fired at the prosecuting witness,

at a time when the person so assaulted was not aware of the presence of the defendant, and was not by the least act or word manifesting any intention of assaulting or otherwise injuring the defendant. The defendant heard this testimony, and did not contradict a word of it. On the contrary, he confirmed it all as follows:

"Q. When you shot at him the first time, he was pouring water out of a pitcher, wasn't he? A. No, sir; he had poured the pitcher of water out, and had the bowl in his hand and dropped the bowl in the front room and broke it. Q. You followed him up? A. I went through this other room. Q. And you never said a word to him when you shot the first time? A. I never did say a word to him at any time. Q. Did he say anything to you? A. Not a thing in the world. Q. Never said a word? When you went out —when he run out of there you fired again, did you? A. No. Q. Didn't your pistol snap? A. When he went in the room? Q. Did your pistol snap? A. Snapped, yes. It didn't go off, wouldn't work. Q. That was when you shot out of the front door? A. I was in the other room when he ran out of the door. I didn't see him go out of the door. Q. You saw him after he got out of the door? A. I saw him after he got out of the door. I was coming back to this room. Q. As soon as you saw him running, you followed him out? A. I shot right from there. Q. Aim at him? A. Yes, sir. Q. Shot to kill, didn't you? A. Yes; that is what I shot for; that is what I aimed to do."

Under this testimony the defendant made the case against him; he was guilty on his own evidence. He testified to no fact upon which he could base a defense or could have been legally acquitted. Even if he was improperly impeached, it did not deprive him of any substantial right growing out of his testimony. The error, if any, was therefore harmless.

Second. The defendant has been permitted to testify that the reason why he assaulted and attempted to kill Finley, the prosecuting witness, was because on the night before the assault the said Finley insulted the wife of the defendant by offering her money to have sexual intercourse with him, and that defendant's wife conveyed this information to him. This evidence was admitted in behalf of the defendant, that it might be considered by the jury for the purpose of mitigating his punishment, if the de-

fendant was found guilty. It was competent for the state to show the true relation existing between the defendant and his wife, in order that they might determine as to whether such an insult, if really offered, did in truth constitute mitigation. It was doubtless upon this ground that the evidence complained of was admitted. In addition to the evidence complained of it was further proven and was undisputed that the defendant was being prosecuted for statutory rape upon his wife at the time he married her, and that at the time of this offense the defendant and his wife were rooming at the house of a Mrs. Thompson, in Ardmore, the same being a house of ill repute, and that the said Mrs. Thompson and one Sallie Hawkins, an inmate of the house and other inmates, had been fined in the police court of Ardmore for conducting a public place of prostitution; that the wife of the defendant invited Finley to Sallie Hawkins' room, upstairs, at Mrs. Thompson's place; that while in this room the wife of defendant sat in the lap of Finley, and kissed him in the presence of Sallie Hawkins and a hack driver named Moorehouse, and then went with Finley into another room, and that when the wife of the defendant parted from Finley she gave no evidence of offended dignity or displeasure. Further statement on this point is unnecessary. These facts were not disputed by any witness.

When a man marries a woman to escape prosecution for her' defilement, and takes his wife into an immoral resort, and absents himself from her and leaves her to come in personal contact with the lecherous libertines who congregate at such places, he has no one but himself to blame if she is improperly approached. When under these circumstances the defendant claims that such an insult constitutes mitigation for attempting to kill the party making it, it is clearly the right of the jury to know the defendant's action in exposing his wife thereto, as well as all other facts which would shed any light upon the transaction, in order that they may understand the true motives of the defendant in making the assault, and determine as to whether or not it constituted mitigation or aggravation; whether the assault was the result of wounded honor, or grew out of a desire to establish the reputation of being a danger-

ous man. The defendant having voluntarily injected this issue into the case, is in no condition to complain at the action of the court in admitting the evidence objected to. Having opened the door of inquiry as to this matter, he cannot in reason and justice demand that it be closed before the state had been heard in reply. Under these conditions he cannot say that the evidence admitted was improper, although under other conditions it would have constituted reversible error. This question has already been passed upon by this court adversely to defendant's contention in the case of *Cannon v. Territory*, 1 Okla. Cr. 600, 99 Pac. 622. In the light of the entire record there was no error in the rulings of the trial court on this question.

Fourth. Counsel for the defendant in their brief say:

"The third assignment of error is that the court erred in overruling the motion of the plaintiff in error for a change of venue. The record shows that the plaintiff in error, on the 4th day of December, A. D. 1908, filed his motion for a change of venue in said cause, which was duly sworn to, setting up the fact that he could not get a fair and impartial trial in said county, for the reason that the citizens thereof were prejudiced against him, and said motion was supported by five disinterested citizens of Carter county."

Section 1, c. 25, Sess. Laws Okla. T. 1903, pp. 220, 221, authorizing a change of venue in criminal cases is as follows:

"Any criminal cause pending in the district court, may at any time before the trial is begun, on the application of the defendant, be removed from the county in which it is pending to some other county in said judicial district, whenever it shall appear in the manner hereinafter provided, that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had therein. Such order of removal may be made on the application of the defendant by petition, setting forth the facts verified by affidavit, if reasonable notice of the application be given to the county attorney and the truth of the allegations in such petition be supported by the affidavits of at least three creditable persons, who reside in said county. The county attorney may introduce counter affidavits to show that the persons making affidavits in support of the application are not creditable persons and

that the change is not necessary, and to examine the witnesses in support of said application in open court in regard to the truth of said application, and if it be made to appear by the affidavits and examination of witnesses, that a fair and impartial trial cannot be had in the county, a change shall be granted and the order made by the court."

From this it appears that the application for a change of venue must be presented to the court before the trial begins, and that the county attorney must have had reasonable notice thereof. It is therefore necessary, in the light of what actually occurred in the trial, and which will hereafter be stated, to determine as to when a trial begins. The defendant is not placed in jeopardy until the jury are selected and sworn, but this is not decisive of the question as to when the trial begins. Under our practice the trial begins the moment the jury are called into the box to be examined as to their qualifications. The defendant must be personally present. The court stenographer is present to preserve the questions asked and the answers given, and the rulings of the court upon all objections made thereto. Upon exceptions saved to such rulings they are as much subject to review of this court as exceptions saved to the examination of witnesses as to the facts of the case before the jury. We, therefore, see no escape from the conclusion that the calling of the jury into the box to be examined upon their *voir dire* is the beginning of the trial. This is the first step taken. The trial has then begun.

This question has been passed upon by the Supreme Court of the United States in the case of *Hopt v. Utah*, 110 U. S. 575, 4 Sup. Ct. 203 (28 L. Ed. 262). The Supreme Court said:

"The validity of the judgment is questioned upon the ground that a part of the proceedings in the trial court were conducted in the absence of the defendant. The Criminal Code of Procedure of Utah (section 218) provides that: 'If the indictment is for a felony, the defendant must be personally present at the trial; but if for a misdemeanor, the trial may be had in the absence of the defendant; if, however, his presence is necessary for the purpose of identification, the court may, upon application of the prosecuting attorney, by an order of warrant, require the personal attendance of the defendant at the trial.' The same Code provides that a

juror may be challenged by either party for actual bias; that is, 'for the existence of a state of mind which leads to a just inference in reference to the case that he will not act with entire impartiality.' Sections 239, 241. Such a challenge, if the facts be denied, must be tried by three impartial triers, not on the jury panel, and appointed by the court. Section 246. The juror so challenged 'may be examined as a witness to prove or disprove the challenge, and must answer every question pertinent to the inquiry.' Section 249. 'Other witnesses may also be examined on either side, and the rules of evidence applicable to the trial of other issues govern the admission or exclusion of evidence on the trial of the challenge.' Section 250. 'On the trial of the challenge for actual bias, when the evidence is concluded, the court must instruct the triers that it is their duty to find the challenge true, if in their opinion the evidence warrants the conclusion that the juror has such a bias against the party challenging him as to render him not impartial, and that if from the evidence they believe him free from such bias they must find the challenge not true; that a hypothetical opinion on hearsay or information supposed to be true is of itself no evidence of bias sufficient to disqualify a juror. The court can give no other instruction.' Section 252. 'The triers must thereupon find the challenge either true or not true, and their decision is final. If they find it true the juror must be excluded.' Section 253. It appears that six jurors were separately challenged by the defendant for actual bias. The grounds of challenge in each case were denied by the district attorney. For each juror triers were appointed, who, being duly sworn, were 'before proceeding to try the challenge,' instructed as required by section 252 of the Criminal Code, after which, in each case, the triers took the juror from the courtroom into a different room, and tried the ground of challenge out of the presence as well of the court as of the defendant and his counsel. Their findings were returned into court, and the challenge, being found not true, the jurors so challenged resumed their seats among those summoned to try the case. Of the six challenged for actual bias, four were subsequently challenged by the defendant peremptorily. The other two were sworn as trial jurors, one of them, however, after the defendant had exhausted all his peremptory challenges. No objection was made to the triers leaving the courtroom, nor was any exception taken thereto during the trial. The jurors proposed were examined by the triers, without any testimony being offered or produced, either by the prosecution or the defense. It is insisted, in behalf of the defendant, that

the action of the court in permitting the trial in his absence of these challenges of jurors was so irregular as to vitiate all the subsequent proceedings. This point is well taken."

In Hopt's Case the defendant had been convicted of murder, and sentenced to death. The conviction was reversed upon the ground, among others, that the trial began with the examination of the jurors as to their qualifications, and as the statute required the presence of the defendant during the trial, and as some of the jurors were examined in the absence of the defendant, he had been deprived of a substantial right, and so the Supreme Court of the United States granted the defendant a new trial. Other authorities could be cited to the same effect; but, as the principle involved is so manifestly just, we will not pursue the discussion further.

The record discloses the following facts with reference to the application for a change of venue: (1) The application was prepared and verified on the 4th day of November, 1908. (2) This case was set down for trial on the 17th day of November, 1908. (3) Upon motion of defendant the case was reset for December 1, 1908. (4) At the instance of the counsel who then represented the defendant the case was passed until December 4, 1908, to enable him to go to Madill and try a case there. (5) When this case was called for trial on the 4th day of December, defendant presented a motion for a continuance, which was by the court overruled. (6) That the motion for a change of venue was not filed until after the jury had been called into the box. (7) No notice of the application for a change of venue had been served upon the county attorney. (8) The following occurred when the motion for a change of venue was presented:

"The Court: When did the state's counsel first have notice of the motion for change of venue—a change of venue would be applied for in this case? Mr. Matson (Asst. Co. Atty.): Since we started into the trial. The Court: How long ago has that been? Mr. Matson: Not over five minutes ago, after the jury were called in this case. The Court: That was the first notice you had of this motion? Mr. Matson: Yes."

In justice to the distinguished counsel who now represent this defendant we will state that they had no connection with this case

until after it had reached this court. Therefore no responsibility attaches to them for what took place in the trial court. While the court should treat all persons having business therein with absolute fairness, it is also true that such persons, and especially attorneys, should treat the court in the same manner. Unfairness of attorneys, and any attempt to impose upon or take advantage of the confidence of the court, cannot be too strongly condemned. In this case the counsel who represented the defendant should at least have been called upon to explain his conduct and purge himself of contempt. This could have been done in the absence of the jury, so that the defendant could not have been prejudiced in their minds thereby.

If this motion for a change of venue was prepared in good faith, and verified 30 days before the trial, why was it not presented sooner? Why was it concealed for 30 days from the county attorney and the court? The action of the attorney who then represented the defendant in requesting this court as a personal favor to pass the case to December 4th in order that he might go to Madill and try another case, amounted to an implied promise that the case would be tried on that date, unless some unforeseen contingency arose in the meantime. It at least expressed an intention and expectancy on the part of counsel that this would be done. But it appears from the record that the motion for a change of venue had been prepared and verified on the 4th day of November, and that this fact was concealed from the county attorney and the court. This court will not tolerate such practice as this. Justice cannot be enforced by unfairness and deceit. Lawyers should be fair and honorable in their dealings with opposing counsel, the courts, and their clients. We approve the action of the trial court in summarily overruling the application for a change of venue, under the conditions upon which it was presented. First, it came too late; second, no notice thereof had been given to the county attorney; third, it is clear that the confidence of the court had been unfairly imposed upon, and that the application for a change of venue was being urged merely for the purpose of getting a continuance. Such applications cannot be made in this manner or be

used for this purpose. They must be made in good faith and presented in the manner prescribed by statute.

In *Johnson v. State,* 1 Okla. Cr. 321, 97 Pac. 1059, this question was elaborately discussed. Among other things this court there said:

"The application for a change of venue is addressed to the sound discretion of the trial judge. He sits both as judge. and jury, and determines all questions of law and fact that arise upon the hearing of the motion. His decision is not subject to review by this court unless an abuse of this discretion. is made to appear."

What was there said, as well as what is herein stated, represents the mature views of this court, and will be adhered to in the future.

The instructions of the court were applicable to the facts of the case. The highest compliment which can be paid them is the fact that the able and critical counsel who represented the defendant in this court did not in any manner attempt to assail them.

We find no error in the record which would permit us to reverse the conviction of the defendant. The judgment of the lower court is therefore in all things affirmed.

DOYLE and OWEN, JUDGES, concur.