### STATE v. JAMES MASSEY.

*Assault with intent to commit Rape.*

On trial of an indictment for assault with intent to commit rape, it ap-
peared that the prosecutrix, while *going from her house to her mother-
in-law's*, about a mile distant, was carrying with her a child in a baby-
carriage and accompanied by a boy of six years of age. Soon after
passing defendant's house, she heard defendant (who was about sev-
enty-five yards off) say, "Halt, I intend to ride in the carriage. If you
don't halt, I'll kill you when I get hold of you." She ran and called
for her mother-in-law, defendant running after her and telling her to
stop, until she got to the gate where she met another woman to whom
she related the matter; *Held* that the evidence is not sufficient to war-
rant a conviction of the intent charged. At most, the circumstances
only raise a suspicion of defendant's purpose, and it was error in the
court to permit the jury to consider them. (*State* v. *Neely*, 74 N. C.,
425, overruled).

(*Matthis* v. *Matthis*, 3 Jones, 132; *Sutton* v. *Madre*, 2 Jones, 320; *Wittkow-
sky* v. *Wasson*, 71 N. C., 451; *State* v. *Bryson*, 82 N. C., 576, cited and
approved, and *State* v. *Neely*, 74 N. C., 425, overruled.)

INDICTMENT for an assault with intent to commit rape,
tried at Fall Term, 1881, of ROCKINGHAM Superior Court,
before *Gudger, J.*

The prosecutrix testified that about the first of November,
1881, she left her house at the cotton factory, near Leaks-
ville, in Rockingham county, about 8 o'clock in the morn-
ing, intending to visit her mother in-law, who resided about
one mile north-west of the factory; that she was carrying
with her a child in a baby-carriage, which she pushed be-
fore her, and was accompanied by a small boy, some five or
six years of age; that she soon passed the house of the de-
fendant, which is a house used as a tenement for operatives,
and had proceeded half way to her mother-in-law's, when
she met a female acquaintance, who was going to the fac-
tory, and had some conversation with her, and continued

STATE v. MASSEY.

her journey; soon after passing the "half way tree," she heard some one say, "halt, I intend to ride in that carriage;" she turned, saw the defendant, and said, "sir?" and he replied, "if you don't halt in a minute, I'll kill you when I get hold of you." She then began to run and call for her mother-in-law to come to her. The defendant kept running after her, telling her to stop, and threatening to kill her if she did not stop, and continued to halloo to her to stop, until she got to the gate, where a colored woman met her, and she turned to show her the man, but he was gone. She told the colored woman and her mother-in-law about the matter—sent for her husband—described the clothes of defendant, whom she had never seen but once before, when on inquiry she was told it was James Massey. When he first called to her, he was about seventy-five yards from her. In her flight she pushed the baby-carriage before her. Her mother-in law heard her cries. There was other evidence, but it is not material to the inquiry.

The defendant's counsel insisted that from the facts and circumstances developed by the testimony, there was no evidence fit to be left to the jury as to the intent charged; and the matter of intent was left so much in the dark that the court should charge the jury that they could not reasonably convict the defendant of the intent charged. But the judge, feeling himself bound by the decision in *Neely's case*, 74 N. C., 425, declined to give the instruction asked, and left the matter to the jury. Defendant excepted. Verdict of guilty, judgment, appeal by defendant.

*Attorney General,* for the State.
*Messrs. Reade, Busbee & Busbee,* for defendant.

ASHE, J. That the defendant is guilty of an assault, according to the testimony of the prosecutrix, there can be no question; but we are of the opinion the evidence in the

case did not warrant the jury in convicting him of the intent charged, and that the court erred in not submitting to the jury the instruction asked by defendant.

We think the jury should have been instructed that there was no evidence, or at least none reasonably sufficient, to maintain the charge against the defendant of an assault on the witness, with a felonious-intent to have carnal knowledge of her person by force and against her will. Such a charge would have been substantially that asked for by defendant. But as the case was left to the jury without any instructions, they were at liberty to infer that the evidence was sufficient to warrant them in finding the defendant guilty of the assault with intent. In this consists the error. Where a judge refuses to instruct the jury that the evidence does not prove the offence charged in the indictment, it is good ground for exception.

In order to convict a defendant on the charge of an assault with intent to commit rape, the evidence should show not only an assault, but that the defendant intended to gratify his passion on the person of the woman, and that he intended to do so, at all events, notwithstanding any resistance on her part. Roscoe Cr. Ev., 310; *Rex* v. *Lloyd*, 7 C. & P., 318; *Joice* v. *State of Georgia*, 53. Ga. Rep., 50.

When the act of a person may reasonably be attributed to two or more motives, the one criminal and the other not, the humanity of our law will ascribe it to that which is not criminal. "It is neither charity nor common sense nor law, to infer the worst intent which the facts will admit of. The reverse is the rule of justice and law. If the facts will reasonably admit the inference of an intent, which though immoral is not criminal, we are bound to infer that intent." *State* v. *Neely*, 74 N. C, 425. Dissenting opinion. Every man is presumed to be innocent until the contrary is proved, and it is a well established rule in criminal cases, that if there is any reasonable hypothesis upon which the

circumstances are consistent with the innocence of the party accused, the court should instruct the jury to acquit, for the reason the proof fails to sustain the charge. The guilt of a person is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.

Even conceding that the defendant pursued the prosecuting witness with the intent of gratifying his lustful desires upon her, does it follow that he intended to do so "forcibly and against her will?" That is an essential element of the crime charged, and must be proved. It must be established by evidence that does more than raise a mere suspicion; a conjecture or possibility, for "evidence which merely shows it *possible* for the fact in issue to be as alleged. or which raises a mere *conjecture* that it is so, is an insufficient foundation for a verdict, and should not be left to the jury." *Matthis* v. *Matthis*, 3 Jones, 132 ; *Sutton* v. *Madre*, 2 Jones, 320 ; *Wittkowsky* v. *Wasson*, 71 N. C., 451 ; *State* v. *Bryson*, 82 N. C., 576.

There is no evidence in this case, in our opinion, from which a jury might reasonably come to the conclusion that the defendant intended to have carnal knowledge of the person of the prosecutrix, at all hazards and against her will. At most, the circumstances only raised a suspicion of his purpose, and therefore should not have been left to the consideration of the jury.

In the case of *Com.* v. *Merrill*, 14 Gray, 415, which was an indictment for an assault with intent to commit rape, the court say : "The nature of the charge presupposes that the intent was not carried out. It is therefore necessary that the acts and conduct of the prisoner should be shown to be such that there can be no reasonable doubt as to the criminal intent. If these acts and conduct are equivocal or equally consistent with the absence of the felonious intent charged

in the indictment, then it is clear that they are insufficient to warrant a verdict of guilty."

The Attorney General relied upon *Neely's case.* The opinion there, was delivered by the late Chief Justice, to whose eminent abilities and learning we are always disposed to yield a becoming deference; but it was a divided court; there was a dissenting opinion filed by Mr. Justice RODMAN and concurred in by Mr. Justice BYNUM, both highly distinguished for their learning and legal acumen; and after a careful consideration of the different views of the question presented by these eminent jurists, we feel constrained to differ from the majority of the court, and adopt the reasoning and conclusion of the dissenting opinion, as enunciating the correct principle applicable to the case.

A *venire de novo* must therefore be awarded the defendant. Let this be certified.

Error.                                        *Venire de novo.*