STATE v. SMITH.

(Filed December 20, 1904).

ASSAULT WITH INTENT TO COMMIT RAPE—*Evidence—Sufficiency—Questions for Jury—Questions for Court.*

In this prosecution for an assault with intent to commit rape, the evidence is not sufficient to be submitted to the jury.

CLARK, C. J., dissenting.

INDICTMENT against Sam Smith, heard by *Judge G. W. Ward* and a jury, at October Term, 1904, of the Superior Court of BLADEN County.

The defendant was convicted of assault with intent to commit rape and sentenced to imprisonment in the State's Prison for five years. The testimony of the prosecutrix was: "I know the defendant; he came into the cotton patch when I was at work last summer. I was hoeing cotton in the field alone; can't say what time of day it was; it was in the morning. Defendant asked me where my pa was and where Asa

White was. He then asked me where my two brothers were. I told him they were gone to the field where pa and Asa White were. The field was a half mile away, in 'new ground' field. He asked me when they would come back, I said in 'a few minutes.' He then said 'give me the hoe and let me hoe out that row of cotton.' I did so and went and got another hoe. He hoed out to the end of the row and threw the hoe in the corner of the fence. He then grabbed me by my left arm and started to put his right to my neck under the chin. He did not quite touch my neck with his right hand. I drew back my hoe with my right hand and told him if he did not go away and let me alone I would kill him with the hoe. He then turned me loose and walked off ten or fifteen steps and said 'you are going to kill me,' and I said 'yes, I am if you don't go off and let me alone.' He went off then to his work in Mr. White's field. I then started to the field where pa was and met my two brothers and told them what had happened. When I told him to turn me loose, he did it; did not threaten me, but scared me."

Asa White testified that the defendant was working for his mother and he heard defendant say afterwards, in speaking of the difficulty, that he had been over there. Witness asked him what he went for and he said to "get some." This is all he said.

It was in evidence that defendant was not seen in the neighborhood again until he was at the preliminary trial. The sheriff found him in Robeson jail. This was the entire evidence. The defendant asked his Honor to instruct the jury that he could only be convicted for a simple assault. This was declined and defendant excepted. From a judgment on the verdict the defendant appealed.

*Attorney-General, Robert D. Gilmer,* for the State.
No counsel for the defendant.

CONNOR, J., after stating the case. The only question presented by the exception is whether there was any evidence on the question of intent proper to be submitted to the jury. *Mr. Justice Ashe,* in *State v. Massey,* 86 N. C., 658, says: "In order to convict defendant on the charge of an assault with intent to commit a rape, the evidence should show not only an assault but that defendant intended to gratify his passions on the person of the woman, and that he intended to do so at all events notwithstanding any resistance on her part." This language has been since the decision of that case the guide followed by the courts in this State. In that case the question bearing on the evidence of intent was much stronger than here. The woman saw the man following, threatening if she did not stop to kill her. The Court held the evidence insufficient. In *State v. Jeffreys,* 117 N. C., 743, Massey's case is approved and may now be regarded as the settled law of the State. The case is easily distinguished from *State v. Mitchell,* 89 N. C., 521, and *State v. Page,* 127 N. C., 512. In both these cases there was evidence of actual violence. We can have no hesitation in adopting the language of a Judge of such elevated character, learning and jealous regard for the sanctity of virtue as *Judge Ashe,* when he says: "When the act of a person may reasonably be attributed to two or more motives, the one criminal and the other not, the humanity of our law will ascribe it to that which is not criminal."

We do not deem it necessary to discuss the facts in this case, nor have we the right to assume the existence of any facts pertinent to the decision of the case other than those certified to us by the Court below. The record states the transaction in the language of the witness. It has ever been the province and duty of the Court to decide and declare the law, and of the jury to decide and declare facts. Whether there is any evidence tending to prove a fact in issue has always been re-

garded as a question of law for the decision of the Court. But whether an inference is to be drawn from the evidence is exclusively in the province of the jury. We would be recreant to our duty as judges were we to fail to declare the law with respect to the question whether there is any evidence for fear of offending the jury. This question the jury do not decide. We have no right to infer, either for the State or the defendant, the existence of any facts which were heard by his Honor or considered by the jury other than those certified to us. To do so would be to depart from our sphere of action and decide a question of law upon an assumption that a state of facts existed of which we have neither knowledge nor information. It is a mistake to say that this Court passes upon the weight of the testimony, the conclusions to be drawn therefrom, or in any respect review the action of the jury. The question which lies at the threshold of every case is whether there is any evidence to be submitted to the jury. We can see no reason why in differing with the Judge upon this question we are reflecting upon his intelligence or learning, more than in differing with him in respect to any other question of law. To introduce considerations of this character into the decisions of this Court is, to say the least, a novelty and we think well calculated to embarrass the Court, and raise issues not proper for our consideration. Our own reports contain numerous cases in which almost every Judge who has sat upon this bench has concurred in reversing the opinion of the Court below upon the question as to whether there is any evidence, and in doing so in this case we are not conscious of any innovation or announcing any new doctrine. If this man is guilty he is guilty according to law and should be so punished. To say that his Honor found beyond a reasonable doubt that the defendant is guilty is to assume that it is the duty of a Judge to set aside every verdict in which he is not so satisfied. This we do not decide to be the duty of the Court. When, in the

STATE *v.* SMITH.

discharge of his duty, he shall set aside a verdict is a matter addressed to his sound judgment and is not reviewable. There is nothing in the record to show the character of the defendant except the fact that he committed an assault upon the prosecutrix. To say that every man who commits an assault upon a woman must be presumed of such character as would justify a verdict that he committed an assault with a felonious intent, would be to do violence to the language of this Court as found in *State v. Massey, supra.* It is said that the jury are the proper triers of the facts, and the facts were within their province, and that we have no right to reverse their judgment on the facts. The fallacy in this position consists in a failure to distinguish between the functions of the Court and the jury. We decide the question of law, not the conclusion of fact. We must discharge our duty with the light that is given us to see it. To fail to do so because of any fear that we should offend twelve sensible and intelligent men would render us unfit to discharge the duties of the high office to which we have been appointed. Upon the testimony before us the defendant is guilty of an aggravated assault. There must be a

New Trial.

CLARK, C. J., dissenting. The defendant, first ascertaining from the girl that her two brothers and her father were absent, in a field a half mile away, made a sudden and violent assault upon her, "grabbed her by her left hand and started to put his right to her neck." The assault is unquestioned. What was his intent was an inference of fact which only a jury is authorized to draw. The defendant afterwards confessed that his purpose in going there was to procure sexual intercourse with the girl. The jury, from the violence and manner of the assault, the seclusion of the place, the avowed purpose of the defendant in going there, from his flight and possibly from their knowledge of the parties, might well

have come to the conclusion that the intention of the defendant was to have carnal intercourse with the girl against her will. If so, he was guilty as charged.

It is true *Judge Ashe* has stated "that the defendant must have intended to gratify his passions on the person of the woman at all events and notwithstanding any resistance on her part." Every lawyer since, who has represented a defendant charged with this dastardly offense, has relied upon this expression. There can be no doubt that the Judge so charged the jury in this case, for there is no exception to the charge. What *Judge Ashe* said is a correct statement of the law, but it does not mean that when the man desists from his purpose, there is no evidence that he did not intend to have intercourse "at all events and notwithstanding resistance on the woman's part." That would simply repeal the statute against assault with intent to commit rape, for if the defendant succeeds, the crime is rape.

What was the defendant doing when he suddenly and violently assaulted an unprotected girl, out of reach of help from her male relatives, of whose absence he had learned upon inquiry? Was he trying to persuade her to yield and to overcome her maiden reluctance by solicitation or was he attempting to have carnal knowledge of her "forcibly and against her will?" Was it an attempted seduction or was it "felonious gallantry?" It was necessarily one or the other, for his purpose to procure sexual intercourse is admitted. It could be procured only with the girl's consent or against her will; there is no other alternative, no middle ground. The jury of twelve men, to not one of whom he objected, and who were doubtless sensible and intelligent gentlemen, have found, beyond a reasonable doubt in the mind of a single member of the jury, that the assault was made with an intent on the part of the defendant to have sexual connection "forcibly and against the will of the woman." The intelligent Judge, who

136——44

presided, not only thought the evidence should be submitted to the jury, but, notwithstanding the gravity of the punishment, did not think the interests of justice required him to set the verdict aside.

The grand jury by a vote of at least twelve of its members found that there was *prima facie* evidence of the defendant's guilt. Thus two full juries at least, and the Judge, after seeing and hearing the witnesses, found that there was evidence. Are a majority of the lawyers who compose this Court, sitting out of sight and hearing of the witnesses, without knowledge of their character, or bearing on the stand, able to say that all those officers have so grossly erred—not as to the law, but as to the facts, and that there was no evidence at all before them !

In vain shall we look for any decision in England, the home of the jury system, for a case in which an appellate court, sitting out of sight and hearing of the witnesses, has held in a criminal case that there was no evidence when the jury unanimously held that there was enough to satisfy each of them beyond a reasonable doubt, and the presiding Judge has refused to disturb the verdict. It is an innovation of recent introduction here, even in civil cases, by judicial construction, for there is no statute to authorize it. The tendency of courts to "amplify jurisdiction" is gradually extending the doctrine until this jurisdiction is invoked in nearly every criminal case that comes up to any appellate court, and in almost certainly every appeal in which a railroad company is defendant. If the expansion of such jurisdiction is continued, instead of the "ancient mode of trial by jury," the jury will become a mere advisory committee whose findings the appellate court may disregard at will. This is already nearly attained in some States. The evils of this assumption of jurisdiction are well stated by Judge Bynum in *Wittowsky v. Wasson,* 71 N. C., 451.

In my humble judgment, the unanimous verdict of twelve men, when not disapproved by the trial judge, is a far more accurate mode of ascertaining the truth of disputed allegations of guilt than the majority vote of the members of an appellate court who differ among themselves as to the effect of evidence which is necessarily imperfectly sent up in cold type. Is there a clearer insight into the inferences to be deduced from evidence given to those who did not hear or see the witnesses than to those who did? Those who wrought our constitutions thought otherwise. They believed juries were more competent than judges to find the facts, and equally impartial. The triers of fact should be subject to challenge. A judge of the law should not be. Such has always been the thought of Anglo-Saxon peoples. *Justice Brewer* of the Supreme Court of the United States well said in a recent opinion that the great difficulty now was to secure the conviction of the guilty, and expressed his conviction that the interests of justice would be best served by returning to the English system under which, to this day, appeals are not allowed in criminal cases. In his opinion, appeals in criminal cases had been detrimental, and had not served the interests of justice in this country.

It cannot be said there was no evidence. There is more evidence here to sustain the charge than in *State v. Garner,* 129 N. C., 536, and fully as much as in *State v. Page,* 127 N. C., 512. In this case there was the forcible assault, there was the avowed intent to procure sexual intercourse, there was the lonely place remote from help, there was the inquiry as to nearness of relatives, there was the "stand off" by a determined woman with her clubbed hoe and the defendant's flight from justice. There may have been other things which the jury were entitled to consider and which give much of its peculiar value to trial by jury. Suppose the girl was white and the defendant a negro? Would that not be a matter to be

considered on the question whether this was an attempted seduction or an assault with intent to succeed against the woman's will? *State v. Garner, supra.* The jury could see for themselves the color of the parties. We cannot. It is not in the record, as many other matters cannot be sent up to us in the record. Both may have been white. We do not know. The jury knew, and they also knew the character of the witnesses and of the defendant, which was a valuable help in arriving at a true inference as to this man's intent and whether or not the defendant was attempting to succeed "against her will" in having sexual intercourse with the girl. We know nothing of the character of the defendant beyond the fact in ·the record that he immediately fled and was found in jail in another county, apparently for some other offense. Would a man of that character be likely to attempt a girl of the virtue and determination shown here, unless he had expected to succeed "forcibly and against her will?" If the intent was solicitation, why so forcible and sudden an assault made? It is possible it might be explained perhaps, but the jury found that it was not. And because when she clubbed her hoe and told him if he did not "let her alone, she would kill him with the hoe," he believed her and turned her loose, are we to find as a matter of law that therefore when he "grabbed her" the defendant did not then intend and was not then attempting to gratify his passions on her "forcibly and against her will?" The jury, the proper triers of the fact, have passed upon defendant's intentions in making the assault. They were within their province and within their sworn duty. I do not think we have the legal right to reverse their judgment on the facts, nor that we can come to a more just conclusion thereon than the jury and the trial judge.

DOUGLAS, J., concurring. I concur in the opinion of the Court that there is no evidence inconsistent with the inno-

cence of the defendant. I do not mean to intimate that the Court either here or below can pass upon the weight of the evidence, or can in any event direct an affirmative verdict. *Spruill v. Ins. Co.,* 120 N. C., 141.