STATE *v.* BOB HAWKINS.

(Filed 24 May, 1911.)

**1. Indictment—Clerical Omissions—Corrections—Offense Sufficiently Charged.**

An indictment charging that the prisoner "unlawfully, willfully and feloniously break and enter" a certain house at night for the purpose of stealing, is not rendered invalid because the word "did" (unlawfully, etc., enter) was omitted, as it appears that the omission was a clerical error and the offense was sufficiently charged.

**2. Larceny—Evidence Circumstantial—Conflicting Evidence—Questions for Jury.**

Upon a trial under an indictment for entering a certain house at night for the purpose of larceny, there was evidence introduced by the State that the prisoner had been forbidden to be present at a town hall where the ladies were giving an entertainment for the benefit of a charity; that a policeman, who slept in the building, late that night heard a noise as if some one were breaking the lock to the door of the hall, placed there for the purpose of locking up certain articles of value which the ladies had used; that the policeman went at once to the hall and found the door open, the lock gone, which he has not found since; that defendant was within the hall, and sat down by a heating stove as he (the policeman) reached the door. *Held,* evidence sufficient for conviction, it being for the jury to determine whether the prisoner's evidence in explanation should be accepted as true.

3. Larceny—Intent—Evidence, Circumstantial.

Upon evidence tending to show that the prisoner broke into a hall in the night, where he had no right to be, where things of value had been locked up and left, there is sufficient evidence of criminal intent to commit larceny to sustain a verdict of guilty.

4. Larceny—Breaking—Ownership of Building—Motion in Arrest— Instructions—Procedure.

The objection that the evidence is not sufficient to show ownership of a building which the defendant is charged with breaking into with intent to commit larceny may not be taken advantage of by motion in arrest of judgment, the procedure being by a prayer for instruction.

APPEAL from *Lane, J.,* at the March Term, 1911, of BURKE.

The defendant was tried and convicted at March Term, 1911, of the Superior Court of Burke County, under section 3333, Revisal of 1905, upon the following bill of indictment:

"The jurors for the State, upon their oaths, do present that Bob Hawkins, late of the county of Burke, on the 31st day of October, in the year of our Lord one thousand nine hundred and ten, with force and arms, at and in the county aforesaid, unlawfully, willfully, and feloniously break and enter the town hall in the town of Morganton, the property of said town of Morganton, then and there situate, in the night-time, in which said town hall there was at the time goods, chattels, dishes, and other merchandise and things of value, with intent unlawfully, willfully, and feloniously commit the crime of larceny, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

Upon the call of the case for trial, and before the jury was impaneled, the defendant moved the court to quash the bill of indictment on the ground that there was no allegation in said bill that defendant did commit any crime, in that the word "did" nowhere appeared in said bill. Motion denied, and defendant excepted.

The State introduces the following evidence:

C. R. Gilbert testified as follows: "I am night policeman in the town of Morganton. On the night of 31 October, 1910, the ladies of the town had a Halloween party in the town hall for the benefit of Grace Hospital. They left the hall some time

between 10 and 11 o'clock that night, and left some dishes, cups, pots, pans, etc., in there. Some time that night, while the party was going on, the defendant Bob Hawkins came up there, and they told him to get out, and he went down the stairway and went away. When they all left the hall door was locked with a padlock, with hasp and staple. That night, some time between 1 and 2 o'clock, I heard a noise like some one working at the lock at the door of the hall. I was in my room just across the aisle in the building. I heard something like a lock break. I got up and went to the door and looked in, and the defendant sat down by the side of the stove. I pulled the door shut, went back to my room, put on my clothes, and went in and arrested defendant and took him to the calaboose and locked him up. The lock was gone, and we haven't found it yet. He said that if I would turn him loose he would go home; that a wagon was coming for him in a few minutes. I heard the noise at the lock, I suppose about five minutes. It was continuous. I heard something like some one walking down the stairway just about the time the lock was broken, and while I heard the noise at the door like some one working with the lock. I sleep in the building across the hall. The building belongs to the town of Morganton."

Cross-examination: "This was some time between 1 and 2 o'clock in the night. It was dark. The lights had gone out. I searched the defendant. He had nothing on his person. I will not swear Bob Hawkins broke the door open or that he broke the lock to the door. I did not see any one break the door open. All that I know is that I heard a noise like some one working at the door and heard something like a lock break and found Hawkins in the hall. He told me that he was hunting for a place to sleep. I told him I would give him a place to sleep, and took him to the calaboose."

Here the State rested.

The defendant introduced the following testimony:

Bob Hawkins, defendant, testified as follows: "I am defendant. Live some six or eight miles from Morganton. Was in town the night the ladies had a Halloween party for the benefit of Grace Hospital. I was employed by Timothy Smith to take

some vegetables and other things to the hall for Mrs. Walton.
I was there most of the time while the party was going on.
They gave me supper and I stayed there until they all left.
I went down street and met up with some of my friends and
took a drink or two of liquor. I got cold and went back up
there to get warm before starting home. Some of my friends
had a wagon and they were coming by the town hall to get me.
I went up to the door, and it was standing partially open, so
that I could see the glimmer of the light from the stove in the
dark room. I walked in and sat down by the stove and di-
rectly the policeman came in and arrested me and took me
down to the calaboose and locked me up. I did not break any-
thing, neither did I attempt to take anything—only wanted
to warm before starting for home."

Four witnesses testified to the good character of the defend-
ant.

The defendant requested that the following instructions be
given to the jury:

1. The court charges you that upon all the testimony in
this case, the jury should return a verdict of not guilty.

Refused, and defendant excepted.

2. The court charges you that the fact that the prisoner
was found in the building, as alleged, is not evidence that he
entered it with the intent to commit any particular crime.

Refused, and defendant excepted.

After the verdict the defendant moved in arrest of judgment
upon the same grounds urged in support of his motion to
quash, and upon the additional ground that there was no
evidence that the hall was the property of the town of Morgan-
ton. Judgment was pronounced on the verdict, and the de-
fendant appealed.

*Attorney-General Bickett and Assistant Attorney-General
George L. Jones for the State.*
*R. C. Huffman for defendant.*

ALLEN, J., after stating the case. It is apparent that the
failure to use the word "did" in the indictment is a clerical
or grammatical error, which is cured by our statute (Revisal,

3254). The meaning of the bill is clear and the defendant could not have been misled, nor could he have failed to understand the exact nature of the offense charged.

In Joyce on Indictments, sec. 201, it is said: "Though an indictment may be couched in ungrammatical language, this will not, of itself, render the indictment insufficient, provided the intention and meaning of the pleader is clearly apparent." And in section 202: "It is the general rule that an indictment is not vitiated by mistakes which are merely clerical, where they do not destroy the sense of the indictment, and the meaning is apparent."

A case in point is *Bond v. State,* 55 Ala., which holds an indictment sufficient which charged that "the defendant broke into and entered a storehouse of R. D., with the intent to steal, in which there was at the time of such breaking and entering goods, merchandise, or other valuable things kept for use."

In *Com. v. Call,* 21 Pick. (Mass.), 515, *Justice Morton* says: "The grammatical and critical objection, however ingenious and acute it may be, cannot prevail. The age is gone by when bad Latin or even bad English, so it be sufficiently intelligible, can avail against the indictment, declaration, or plea."

The evidence for the State, when considered in connection with that of the defendant, and the evidence of his good character, would have fully justified a verdict of acquittal; but we cannot say there was no evidence fit to be submitted to the jury, and it was for them to determine its force and conclusiveness.

The controlling principle in determining whether there is evidence which the jury ought to consider is well stated in *S. v. White,* 89 N. C., 464, and approved in *S. v. Walker,* 149 N. C., 530, as follows: "It is well-settled law that the court must decide what is evidence, and whether there is any evidence to be submitted to the jury, pertinent to an issue submitted to them. ·It is as well settled that if there is evidence to be submitted, the jury must determine its weight and effect. This, however, does not imply that the court must submit a scintilla—very slight evidence; on the contrary, it must be such as, in the judgment of the court, would reasonably warrant the jury in finding a verdict upon the issue submitted, ·

affirmatively or negatively, accordingly as they might view it in one light or another, and give it more or less weight, or none at all. In a case like the present one, the evidence ought to be such as, if the whole were taken together and substantially as true, the jury might reasonably find the defendant guilty. A single isolated fact or circumstance might be no evidence, not even a scintilla; two, three, or more, taken together, might not make evidence in the eye of the law; but a multitude of slight facts and circumstances, taken together as true, might become (make) evidence that would warrant a jury in finding a verdict of guilty in cases of the most serious moment. The court must be the judge as to when such a combination of facts and circumstances reveal the dignity of evidence, and it must judge of the pertinency and relevancy of the facts and circumstances going to make up such evidence. The court cannot, however, decide that they are true or false; this is for the jury; but it must decide that, all together, they make *some evidence,* to be submitted to the jury; and they must be such, in a case like the present, as would, if the jury believe the same, reasonably warrant them in finding a verdict of guilty."

The evidence of the State tended to prove that on the night the crime is alleged to have been committed there was a crowd in the hall until between 10 and 11 o'clock; that while the crowd was there the defendant went to the hall and was told to leave, which he did; that after the crowd left, the door was locked, a padlock, hasp, and staple being used; that property of some value was left in the hall; that between 1 and 2 o'clock in the night a policeman, who slept in the building, heard a noise like some one working at the lock of the door; that he heard something break and he thought it was the lock; that he went immediately to the hall and found the door open and the lock gone; that the defendant was on the inside, and when the policeman reached the door, he sat down by the stove.

If so, the jury could find from the evidence that the defendant broke the lock to the door and entered the hall, in which there was property, with the criminal intent alleged in the indictment.

"The intent may, and generally must, be proven by circumstantial evidence, for as a rule it is not susceptible of direct proof. It may be inferred from the time and manner at and in which the entry was made, or the conduct of the accused after the entry, or both." Cyc., vol. 6, p. 244.

In *S. v. McBryde,* 97 N. C., 393, the defendant was charged with breaking into a dwelling with intent to commit larceny, and in discussing the evidence of intent, the Court says: "The intelligent mind will take cognizance of the fact that people do not usually enter the dwellings of others in the night-time, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also. The intent is not the object of sense; it cannot be seen or felt, and if felonious, is not usually announced; so where no felony is committed, it would be difficult to prove a crime consisting of the intent alone, unless the jury be allowed to infer the intent from circumstances."

This is the law as announced in many decisions of this and other courts, but in its application juries should be guided by the humane rule delivered by *Judge Ruffin* in *S. v. Massey,* 86 N. C., 660: "When an act of a person may reasonably be attributed to two or more motives, the one criminal and the other not, the humanity of our law will ascribe it to that which is not criminal. 'It is neither charity nor common sense nor law to infer the worst intent which the facts will admit of. The reverse is the rule of justice and law. If the facts will reasonably admit the inference of an intent, which though immoral is not criminal, we are bound to infer that intent.' "

The evidence of criminal intent is, we think, stronger than in *S. v. McBryde, supra,* and in *S. v. Christmas,* 101 N. C., 754, in which judgments upon convictions were affirmed.

The motion in arrest of judgment upon the ground that the State failed to prove that the hall was the property of the town of Morganton, was properly overruled.

If there had been a failure of proof, the defendant should haven taken advantage of it by a prayer for instruction, and

not by a motion in arrest of judgment.   *S. v. Baxter,* 82 N. C., 606; *S. v. Harris,* 120 N. C., 578; *S. v. Huggins,* 126 N. C., 1056.

It seems, however, there was evidence of the fact.   A witness testified without objection: "The building belongs to the town of Morganton," and there was no evidence to the contrary. The fact that the defendant was in the house was a circumstance to be considered by the jury upon the question of criminal intent.   We find

No error.