WILLIS v. STATE.

[74 South. 677, In Banc.]

HOMICIDE. *Indictment. Form and requisites. Omissions.*

An indictment charging "that Oscar Wills, on the fifth day of
September, 1916, in the county and district aforesaid, willfully,
feloniously and maliciously, then and there attempt to shoot and
wound one V. K. Reed with a deadly weapon to wit a shotgun,
etc., is fatally defective in omitting the word "did" before the
word attempt in the indictment.

APPEAL from the circuit court of Jones county.
HON. PAUL B. JOHNSON, Judge.

Oscar Willis was convicted of assault with intent to kill and appeals.

The facts are fully stated in the opinion of the court.

*Robert L. Bullard,* for appellant.

Does this indictment charge any offense as it stands without supplying any word? No one, no court has ever, or will ever, contend that it does and it could make no difference whether the omission was by mistake or design. And it is not, as contended, a grammatical error —it is one of the substance. Then if something is to be supplied who is to determine what that shall be? Shall it be one word or more? This, as long as the Constitution stands cannot ever be done by the court. "But," says the state, "it is a technicality." "True," say I, "so is the rule that requires that the evidence must exclude every reasonable doubt." "My technicality," he says, "is immaterial and ought to be disregarded."

If so, who is to determine that? The power that may determine that one is nonessential, and abrogates it, may also do the same for the others, and all others. Suppose the court should say that the word "did," or similar words, may be omitted? Then you may hold that the words, "with intent," "with a deadly weapon," "attempt to shoot," or any other may be omitted. In fine you may as well hold that an indictment may be omitted, and then that the evidence may merely preponderate, etc. It necessarily follows that if the court has the power to say that one legal principal is nonessential you have the like power to say that any other, or all others are equally so. How refreshing, in this connection are those words of, "the beloved of us all," the lamented Calhoun in *Hawkins* v. *Mangum,* and how pertinent here:

"This is the mandate of the sovereign people in convention, and it must be obeyed by the courts, whether the consequence enshroud us in darkness or flood us in light."

But they would have us think that we are fallen upon more enlightened days, and that jurists like Calhoun, Woods, Cooper, Arnold, Campbell, and a host of others,

who had too much reverence and respect for the law as it is given to us to lay violent hands upon it, are back numbers.

Now let it be understood that this is no attack upon any rule or principal announced by this court. They are all "righteous in my eyes." There is a vast difference between the abrogation of a legal right, or the denial of it, and a holding that the misapplication of it, or other legal principal, is not such error as prejudiced the right of the party against whom the error was committed. No one has a vested right in "judicial error," but every one has in all existing legal principal and right.

Now in conclusion I have to say that it matters little, perhaps, what becomes of the appellant and his fortunes. Let us assume that it matters nothing, and that he is but the merest bubble tossed upon the restless waves of these uncertain times, that will soon disappear and leave not a ripple; yet the principle here contended for is vital and everlasting. If our judiciary can say that any legal principle, rule, or right is not essential and may be disregarded in any case, then for the first time in our history has our government become a government of men and not of laws.

*Frank Roberson,* Assistant Attorney-General, for the state.

The two errors assigned are as follows: First, the indictment is void on its face and charges no offense because of the omission of the verb, "did" in the indictment; second, that the evidence offered by the state is not sufficient on which to base a conviction.

This court has held in *Cook* v. *State,* 72 Miss. 517, 17 So. 228; *Hall* v. *State,* 44 So. 810, and *McCearley* v. *State,* 52 So. 796, that the omission of the word, "did" in an indictment is fatal error and can be taken advantage of at any time.

If the court follows these decisions, it would seem to be necessary to reverse this case. However, I submit that the reasoning in these cases no longer applies if it ever in fact existed. I admit that the great weight of authority is in support of these decisions, but I have long since been of the opinion that the supreme court of Mississippi would, at some time, refuse to follow a technicality of this kind. In the case at bar, no demurrer was filed to the indictment and no motion in arrest of judgment was made, and this point as to the omission of the word "did," is first presented to this court.

The purpose of an indictment is to inform a defendant of the crime of which he is charged. If the language used performs this purpose, how can it logically be said that the indictment is not good in law even though it may be grammatically imperfect.

I think I can assert with confidence that if this proposition were submitted to any member of this court as an original proposition under the facts of this case, that it would be held without hesitation to be a clerical error and not an error that would reverse. The defendant and his counsel in this case understood perfectly the crime with which he was charged as would appear from the instructions given the defendant in the court below.

I am persuaded to present this matter to the present court for the reason that I have observed a tendency on the part of the supreme court of Mississippi to disregard technical objections that once obtained but the reasons for which have long since ceased to be recognized by the bar.

Extremely technical accuracy anciently required, called forth the remarks of Lord Hale that, "the great, strict and unseemly niceties required in some indictments tend to the reproach of the law, to the shame of the government, to the encouragement of villainy, and to the dishonor of God."

It is therefore refreshing to note that some attempt has been made to break away from these rules of strict

adherence to procedural technicalities that have become rigid from the petrification of time rather than because of intrinsic merit. Such notable efforts have marked the decisions of the courts of Oklahoma which the tribunals of the older states would do well to emulate. Chief Justice. FURMAN of that court, in *Caples* v. *State,* 3 Okla. Criminal Reports, 72, used this language: ''The supreme purpose of this court is to give the people of this state a just and harmonious system of criminal jurisprudence, founded on justice and supported by reason, freed from the musticism of arbitrary technicalities, and this standard will control our decisions, it matters not what or how many other appellate courts may have decided to the contrary.

''We know that there are respectable authorities holding to the contrary, but this court will not follow any precedents unless we know and approve the reason upon which they are based, it matters not how numerous they may be, or how eminent the court by which they are promulgated. It is our duty to construe the laws of Oklahoma regardless of the law of other states. Now that our criminal jurisprudence is in its formation period, we are determined to do all in our power to place it upon the broad and sure foundation of reason and justice, so that the innocent may find it to be a refuge of defense and protection, and that the guilty may be protected, and taught that it is an exceedingly serious and, dangerous thing to violate the laws of this state, whether they be rich and influential or poor and friendless. They all stand alike and upon an equality before this court. If we place our criminal jurisprudence upon a technical basis, it would become the luxury of the rich, who can alike hire able and skilled lawyers to invoke technicalities in their behalf, but what would become of the poor and friendless who cannot secure these services? It is the poor and friendless who cannot secure these services, and who need the strong arm of the law for their defense. By placing our system of criminal jurisprudence

upon the basis of reason, justice becomes the right of the poor as well as the rich. We will give full consideration to all authorities which are supported by living principles, and will follow them when in harmony with our laws and the conditions existing in Oklahoma. But we must confess to want of respect for precedents which were found in the rubbish of Noah's ark, and which have outlived their usefulness, if they ever had any. When the reason for a rule of law ceases, the rule should cease also. If this be revolution, then we are and will continue to be revolutionary. The information in this case is free from the objections urged against it, and we approve the action of the trial court in overruling the objections thereto.''

An indictment in which the word ''did'' was omitted was held to be a mere clerical misprision in the following cases: *Dickens* v. *State* (Fla.), 38 So. 909; *State* v. *Whitnery,* 15 Vt. 298; *State* v. *Edwards,* 19 Mo. 674; *People* v. *Duford,* 66 Mich. 90, 33 N. W. 28; *Caesar* v. *State* (Fla.), 39 So. 470. The case of *Caesar* v. *State,* comes from a court that has a high standing in our American courts, and I believe that our court can well adopt the reasoning in that case and thereby uphold the indictment in the case at bar.

I do not think it necessary to enter into a discussion as to the sufficiency of the testimony to sustain a conviction. The court will ascertain from this record that the jury were well justified in returning a verdict of guilty as charged. I respectfully submit that on the facts of this case, the judgment of the lower court should be affirmed.

COOK, J., delivered the opinion of the court.

The question in this case is: Did the indictment preferred against the defendant charge any crime known to the law? Omitting the formal part of the indictment, the offense attempted to be charged is in these words:

"That Oscar Willis, on the 5th day of September, 1916, in the county and district aforesaid, willfully, feloniously and maliciously, then and there attempt to shoot and wound one V. K. Reed with a deadly weapon, to wit, a shotgun, intending thereby with malice aforethought to kill and murder the said V. K. Reed, against," etc.

It will be observed that the indictment does not charge that the defendant attempted or did attempt to shoot V. K. Reed. The omission of the word ''did'' has been held to be a fatal error in three cases heretofore decided by this court: *Cook* v. *State,* 72 Miss. 517, 17 So. 228; *Hall* v. *State,* 44 So. 810; *McCearley* v. *State,* 97 Miss. 556, 52 So. 796. It is conceded by the attorney-general that the case must be reversed if we follow these decisions. It is insisted that the decisions referred to are extremely technical, and should be overruled. We do not concur in this criticism of the decisions and decline to overrule them, and the judgment of the trial court is therefore reversed, and the cause remanded.

*Reversed and remanded.*

Holden and Stevens, JJ., dissenting.

Holden, J. In dissenting from the majority opinion in this case I desire to record my views briefly. I realize that my dissent is contrary to the rule in this state as announced in *Cook* v. *State,* 72 Miss. 517, 17 So. 228, which decision was followed by this court in two other cases. But I believe that the decision in the Cook Case is wrong, as the defect in the indictment there leaving out the word ''did'' was a mere clerical error, inadvertently made, and was not a substantial defect, nor an integral part of the indictment, such as would make the indictment void. However, it will be noticed that the indictment in the Cook Case is somewhat different from the indictment in the case here. The indictment complained of as being fatally defective in this case is as follows:

"That Oscar Willis, on the 5th day of September, 1916, in the county and district aforesaid, willfully, feloniously and maliciously, then and there attempt to shoot and wound one V. K. Reed with a deadly weapon, to wit, a shotgun, intending thereby with malice aforethought to kill and murder the said V. K. Reed, against," etc.

It will be observed that the alleged defect in the above indictment consists only of the omission of the auxiliary verb "did," or the omission of "ed" added to the word "attempt." If either had been written into this indictment there would be no claim of defect whatever. By reading the *Cook Case, supra,* it will be seen that the reasoning of the court there seems to be based upon the speculation that the grand jury may have intended to charge the accused with an "attempt" instead of the commission of the crime. The indictment here charges only an attempt, so that there is a distinction, if not a material difference, in the two indictments. But aside from any such refined distinction as this, I do not think that the omission of the word "did" or "ed" in this indictment invalidates it.

During the last decade, the bar, bench, and the laity have been complaining about technical procedure causing delay and injustice in the courts of our country; and much has been preached against the delay of the law on account of technical and antiquated rules of procedure and practice, generally in favor of the criminal, but we find some courts still clinging to the old out of date technical rules, which are in some instances so absurd as to be amusing to the criminal himself when on trial.

I do not think that an indictment should be held to be void, if from the entire language used in the indictment the plain intendment and clear meaning is ascertainable by a person of ordinary intelligence, and the accused is reasonably informed of the nature and cause of the accusation, and a conviction or acquittal under the

indictment can be pleaded in bar of another prosecution for the same offense.

The omission of the word "did," or "ed," in the above indictment is not a fatal defect, but is merely an unsubstantial clerical error, inadvertently made in writing the charge. This mistake is not vital, as the intendment and plain meaning of the accusation is clearly apparent to any person of average intelligence. It fully informs the accused of the nature and cause of the accusation upon which he is to be tried. Whether we say that the word "did" or the addition of "ed" to the word "attempt" may be supplied by construction here, and the inadvertent omission be read into the indictment in order to establish its plain intendment and meaning, or whether we say that the obvious intendment and plain meaning is safely ascertainable without supplying such omission, makes little difference, so long as the correct and just concluson is reached as to the validity of the written charge.

Words are mere vehicles, used for the purpose of conveying thoughts and ideas, and when the thought and idea intended clearly appears from the context of the indictment, the language has adequately served its purpose. The omission of the verb "did" may be supplied wherever the language used in the whole indictment justifies the conclusion that it was a clerical mistake, and without it the accused has full information as to the offense he is called upon to defend. It is not an integral part nor essential ingredient of the offense charged here, but is merely an omitted word used in the presenting part of the indictment. And while the indictment with this word omitted is imperfect, still the deformity is not such as to destroy the vitality of the whole written accusation. While the indictment may be deformed, or defective in form, yet it does not follow that it is entirely lifeless. The essentials of the crime are fully stated in the indictment here. The accused was in no way prejudiced or embarrassed in making his defense to the

charge. An acquittal or conviction of the offense charg-
ed by the language used in this indictment would. un-
doubtedly bar any subsequent prosecution for the same
crime. The conclusion above being true and correct,
what reason is there left justifying the courts in uphold-
ing the contention that the unsubstantial defect caused
by the inadvertent omission of the word "did" makes
the indictment constitutionally void?

The main purpose of an indictment is to reasonably
notify the accused of the exact offense he is charged
with having committed, and for which he is to be tried,
so that he may prepare and make his defense to the
charge. The purpose of court procedure is not to shield
the guilty, but to protect the innocent, and afford to both
the guilty and innocent a fair and full hearing on the
merits of the accusation. No more can be demanded by
the accused. In the past the courts have required such
technical strictness in criminal procedure as to merit
just censure from the bar and the public. The trend of
modern judicial thought is opposed to upholding mere
technical unsubstantial errors, and I heartily agree with
this view. The accused cannot justly complain unless he
has been deprived of some substantial right under the
law. This rule is a safe guide in the administration of
justice.

In the case before us the accused raised no objection
either by motion or demurrer to the indictment in the
lower court, but he presented the merits of his defense
to the lower court and jury, and upon conviction he ap-
peals and raises the point of a defective indictment for
the first time in this court, and now asks that he be
granted another chance of acquittal before a jury be-
cause the word "did" was left out of the indictment. I
am aware of the fact that this court has. held in the *Cook
Case, supra,* that the invalidity of a felony indictment
cannot be waived, and may be presented in this court for
the first time in any felony charge. But I also think
that this latter rule is wrong; and while it seems to be

the established law of this state by decisions, still I think that there should be a reform in the practice and procedure of our courts, either by enactment of the legislature, or by this court overturning these moss-covered technical rules of practice and procedure which have so long furnished an avenue of escape for criminals, and which should now be relegated to the junk pile, and hereafter proceed in a reasonable, common-sense manner in the trial of criminal cases, so that justice, the thing desired in all cases, may be better obtained and more abundantly administered in the courts of our state.

The majority opinion relies entirely upon the *Cook Case, supra,* and proposes to follow that case as the rule in this state. I am reluctant to overrule any prior decisions of this court, unless it clearly and manifestly appears that such decision is erroneous; and of course where property rights or the rights of life or liberty, are involved, and would be disturbed or injured, I would especially hesitate to overrule a former decision of this court. In fact, I am sincere in my support of the doctrine of *stare decisis;* but the decision of the question before us here now cannot injure the welfare of any person, nor disturb any property interest, if the decision in the Cook Case were overruled, and I think that it should have been done. But the majority here contend that the decision in the Cook Case has stood so long as the law of this state that they do not feel constrained to overrule it. I think that it is time now to overrule the Cook Case decision, as too many criminals have already escaped justice through the rule there announced, which is based upon an immaterial technicality; and it is time to correct this rule of practice and procedure in Mississippi, and let the man charged with crime be required to appear in the courts and defend his case upon the merits, and when he has received a fair and impartial trial, and it does not appear that he has been deprived of any substantial right due him under the law or the Constitu-

tion in the trial, then he has no good reason to complain on appeal to this court.

There are numerous decisions in the different states of America which fully sustain the views that I have expressed above. In fact, the weight of the best authority in other states favors my position in this case. I cite here below a few authorities which sustain my opinion, and they appear to announce the right and reasonable conclusions on the subject: *Stallworth* v. *State,* 155 Ala. 14, 46 So. 518; *Dickens* v. *State,* 50 Fla. 17, 38 So. 909; *State* v. *Whitney,* 15 Vt. 298; *State* v. *Edwards,* 19 Mo. 674; *People* v. *Duford,* 66 Mich. 90, 33 N. W. 28; *Caesar* v. *State,* 50 Fla. 1, 39 So. 470, 7 Ann. Cas. 45; *People* v. *Haagan,* 139 Cal. 115, 72 Pac. 836; *State* v. *Hawkins,* 155 N. C. 466, 71 S. E. 326; *Caples* v. *State,* 3 Okl. Cr. 72, 104 Pac. 493, 26 L. R. A. (N. S.) 1033; *Krueger* v. *People,* 141 Ill. App. 510; *Couch* v. *State,* 6 Ala. App. 43, 60 So. 539; *Smith* v. *United States,* 157 Fed. 721, 85 C. C. A. 353; *People* v. *Miles,* 123 App. Div. 862, 108 N. Y. Supp. 510; *Jones* v. *United States,* 162 Fed. 417, 89 C. C. A. 303; *Bowes* v. *State,* 8 Okl. Cr. 277, 127 Pac. 883; *State* v. *Sharp,* 121 Minn. 381, 141 N. W. 526; *Rutland* v. *Commonwealth,* 160 Ky. 77, 169 S. W. 584; *Deen* v. *State,* 7 Okl. Cr. 150, 122 Pac. 941; *State* v. *McAninch,* 172 Iowa, 96, 154 N. W. 399; *Gamblin* v. *State,* 45 Miss. 658.

"The extreme technical accuracy anciently required called forth the remarks of Lord Hale that 'The great, strict, and unseemly niceties required in some indictments tend to the reproach of the law, to the shame of the government, to the encouragement of villainy, and to the dishonor of God.' It is plain, however, that much of the tautology and prolixity which characterized indictments in the early period of criminal procedure can be safely avoided without any infringement of the right of the accused to demand the nature and cause of the accusation against him, and it is the policy of modern courts to disregard mere technical objections and to re-

quire only that a criminal pleading shall fully state the essential elements of the offense charged." 14 R. C. L. 171.

"The charge in the indictment that the defendant 'kill' the deceased is so plainly a clerical mistake in leaving off 'ed' that it is self-correcting; and so, also, is the omission of the word 'is' in the usual formula, 'whose name is to the grand jury unknown.'" *Stallworth* v. *State, supra.*

"The rule for the interpretation and construction of even indictments, which are construed more strictly than affidavits . . . is, if the sense is clear, nice, or technical exceptions are not to be favorably regarded, and verbal inaccuracies, or clerical errors, which are explained and corrected by necessary intendment from other parts of the indictment, or errors in spelling, which do not obscure the sense, are not fatal." *Couch* v. *State, supra.*